IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * |
| | * CRIMINAL NO. JKB 21-0037 |
| DONTA MADISON, | * |
| Defendant | * |

*******

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S APPEAL OF THE DETENTION ORDER**

The United States of America, by and through Erek L. Barron, United States Attorney for the District of Maryland and Clinton J. Fuchs, Assistant United States Attorney for said district, respectfully submits this response in opposition to the Defendant's appeal of his detention order. For the reasons set forth below, the Defendant's appeal should be denied.

**I. Background**

On February 3, 2021, the Defendant, Donta Madison, was charged by criminal complaint with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; and possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841. ECF 1. The Defendant and three other individuals were subsequently charged in a superseding indictment with conspiracy to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. § 846 and with individual drug distribution offenses in violation of 21 U.S.C. § 841. ECF 29.

On November 5, 2021, the Defendant pleaded guilty to possession with the intent to distribute fentanyl in violation of 21 U.S.C. § 841, pursuant to a plea agreement with the Government. ECF 93, 94. Sentencing in this matter is currently scheduled for March 28, 2022.

A detention hearing was held on February 19, 2021, at the conclusion of which the

Defendant was ordered detained. ECF 12. The Defendant moved for reconsideration of the detention order on November 8, 2021 (ECF 98), that motion was denied on November 9, 2021. ECF 99. The Defendant is currently detained at the Chesapeake Detention Facility ("CDF") in Baltimore City, Maryland. The Defendant has appealed the order of detention arguing that the spread of COVID-19 at CDF and his underlying health condition militate in favor of his release.

## II. Argument

### A. Legal Framework

There is a presumption in favor of detention after a defendant has pleaded guilty and is awaiting sentencing. 18 U.S.C. § 3143. Where the offense of conviction is a drug offense punishable by ten or more years imprisonment, § 3143(a)(2) provides that the Court "shall order" detention of the defendant unless:

> **(A)** **(i)** the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or **(ii)** an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> **(B)** the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2).

Here, the defendant pled guilty to possession with the intent to distribute controlled substances and faces a maximum sentence of 20 years imprisonment. There is no likelihood that a motion for acquittal or new trial will be granted (the Defendant pleaded guilty) and the Government intends to recommend a sentence of imprisonment. Accordingly, the requirements of § 3143(a)(2) apply to the case at hand.

An appeal of a detention order for a person subject to detention under 3143(a)(2) may be granted if the Court finds by clear and convincing evidence that the person is not likely to flee or

pose a danger to the safety of the community and "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

### B. Conditions at CDF Do Not Constitute an "Exceptional Reason" For Release

Current conditions at CDF do not provide an "exceptional reason" for the Defendant's release. Although the Government acknowledges that the Defendant suffers from medical conditions that place him at a higher risk of becoming severely ill from COVID-19, the limited spread of COVID-19 at CDF, the mitigation measures in place and the Defendant's vaccination status, all weigh against his release.

First, the number of current cases of COVID-19 at CDF is limited. According to the United States Marshalls Service ("USMS"), as of January 18, 2022, there were nine detainees at CDF who were COVID-19 positive. This represents roughly 2.5% of a total population of approximately 370 detainees (the weekly average). *See* Joint Status Report, *Catchings v. Wilson,* Case No. TSE 21-0428 (D.Md.), ECF 121 at 10. Although any case of COVID-19 within CDF is of great concern, it is important to note that the current positivity rate in Maryland is 19.77%. *See* Maryland COVID-19 Data Dashboard, *https://coronavirus.maryland.gov* (last visited January 18, 2022). Importantly, the nine current positive cases at CDF are a significant reduction from the 31 positive cases among detainees between December 16, 2021, and December 30, 2021. *Id* at 7.

Second, CDF has undertaken significant mitigation efforts to limit the spread of the virus. In the Joint Status Report filed in *Catchings,* the Department of Public Safety and Correctional Services ("DPSCS") reported that it holds a regular vaccination clinic, tests detainees and staff weekly and continues to isolate detainees who test positive for COVID-19 in medical/monitoring facilities away from the general population. *Catchings,* ECF 121 at 9-11. In addition, under the

3

terms of the settlement agreement in *Catchings,* DPSCS has agreed to implement contact tracing, provide additional cleaning/sanitation, provide personal protective equipment ("PPE"), require mask-wearing, maintain social distancing, and provide case monitoring, and reporting. ECF 70-2.

Third, the Defendant has been vaccinated against COVID-19 (the USMS reports that the Defendant received the second dose of a COVID-19 vaccine on April 26, 2021). Although the Omicron variant of COVID-19 has spread rapidly and is an increasing proportion of total COVID-19 cases, the Centers for Disease Control reports that current vaccines are "expected to protect against severe illness, hospitalizations, and deaths" due to infection with the Omicron variant. *See* CDC, *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last updated Dec. 20, 2021).

Taken together, the limited rates of infection at CDF relative to the broader community, the mitigation efforts in place at CDF, and the Defendant's vaccination status, all demonstrate that the risk of infection to the Defendant does not warrant overturning the order of detention.

**C. The Defendant Poses a Danger to the Community**

Even assuming, *arguendo*, that current conditions at CDF constitute an "exceptional reason" for release, the nature and circumstances of the Defendant's offense weigh against release pending sentencing.

In his plea agreement with the Government, the Defendant admitted that between March 2020 and February 3, 2021, he was the source of supply of fentanyl to an open-air, retail drug "shop" that operated in and around the intersection of Queensbury and Spaulding Avenues in Baltimore City, Maryland. In addition to acting as the drug trafficking operation's source of supply

of fentanyl, the Defendant also personally sold fentanyl to retail and wholesale customers including one incident in which the Defendant provided a wholesale customer with approximately 240 grams of fentanyl. Overall, during the period of the conspiracy, the Defendant and his co-conspirators distributed and possessed with the intent to distribute more than 400 grams of fentanyl.

Of great concern, the Defendant admitted that he and his co-conspirators possessed firearms in connection with their drug trafficking activities. Indeed, in five separate incidents between March 2020 and February 2021, investigators recovered firearms hidden in and around the conspiracy's area of operations.

Government also believes that the drug trafficking operation was connected to several acts of violence between March 2020 and February 2021 (although the Defendant has not admitted his involvement with these offenses). On March 25, 2020, two suspected customers of the drug operation were murdered approximately one block from the intersection of Queensbury and Spaulding Avenue. Less than three months later, on June 17, 2020, the suspected former leader of the drug shop was killed in close proximity to the shop's operations. Finally, on February 18, 2021, another suspected customer of the drug trafficking operation was murdered in the area of the drug shop's operations by a suspected member of the conspiracy.

The damage the drug trade and its attendant violence inflicts on the local community is well known. Indeed, 2021 marked the seventh year in a row in which Baltimore City suffered more than 300 homicides and the number of deaths resulting from opioid overdoses has risen dramatically in recent years. Despite this, the Defendant chose to take part in the drug trade and profit from it. Therefore, given the nature and circumstances of the offense, the Defendant poses a clear danger to the community that cannot be ameliorated by conditions of release, however

restrictive.

### III. Conclusion

Although the Government is cognizant of the danger posed by COVID-19, the current conditions at CDF do not constitute an "exceptional reason" to overturn the order of detention. In light of the Defendant's vaccination status and the fact that rates of infection at CDF are lower the rate of infection in the surrounding community (and falling), the Defendant's argument that his release is necessary for his protection, are unpersuasive. Moreover, even assuming that conditions at CDF supported the argument for release, the nature and circumstances of the Defendant's offense make clear that he poses a danger to the community that outweighs such concerns. Therefore, for all the reasons noted above, the Defendant's appeal of the detention order should be denied.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:   */s/ Clinton J. Fuchs*
Clinton J. Fuchs
Assistant United States Attorney